15360

FETNER v. AETNA LIFE INS. CO.
(Two cases)

(18 S. E. (2d), 521)

May, 1941.

*Messrs. Robinson & Robinson,* of Columbia, for appel-
lant,

*Mr. Douglas McKay, Mr. John B. McCutcheon,* and *Mr. Douglas McKay, Jr.,* all of Columbia, for respondent,

January 29, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

This appeal involves two cases which were by stipulation of counsel tried together in the Richland County Court.

In the trial of the case, plaintiff (appellant) was held to proof of total and permanent disability resulting from a lung abscess, from which holding appellant did not except.

The provision in the policies on which appellant sought recovery reads as follows: "If total disability of the insured begin after the date of this policy and before age sixty, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent the insured from pursuing any occupation for wages or profit, or * * *, the insured shall be deemed to be totally and permanently disabled within the meaning of this policy."

When all the testimony was in, the respondent moved for a directed verdict on the ground that there was not sufficient evidence in the record to warrant the submission to the jury of the issue of total and permanent disability. This motion was granted, and the appellant comes to this Court alleging error in the granting thereof; and also alleges error in refusing to allow the employer of appellant to answer the question as to whether the appellant was able to carry on the duties of office manager of the Cary Printing Company after his operation; and to testify as to whether the plaintiff was as valuable an employee of the Cary Printing Company after his operation as before; and in refusing to permit the appellant to testify as to his financial condition just prior to the time he returned to work.

The Cary Printing Company (job printers) at Columbia, South Carolina, is owned solely by Mr. Harry Cary. The appellant had been working for Cary continuously from 1924 until he became ill in January, 1940, which illness was finally diagnosed as a lung abscess. He underwent two operations at a hospital, and during the second operation, according to the testimony of one of his physicians, the affected lung was accidentally collapsed. making it necessary to stop the operation at that point, and unnecessary to thereafter operate, the collapse of the lung resulting in a natural drainage of the abscess. The wound was packed from time to time and through drainage and absorption the abscess finally disappeared and the wound healed. There is nothing in any of the medical testimony from which a reasonable inference could

be drawn that there was not a complete recovery from the lung abscess.

The appellant continued to work intermittently from January, 1940, the inception of his illness, until April 9, 1940, when he was carried to the hospital where he remained until May 5, 1940. He then went home and stayed in bed for several weeks, but on June 17, 1940, returned to work with Cary Printing Company, although at that time his wound had not entirely healed and it was in November, 1940, before it became unnecessary to keep a dressing over the wound. There is no question about appellant having been a very ill man, but as aforesaid, the medical testimony is to the effect that there has been a complete recovery from the lung abscess. Naturally he has been left with a scar at the point of the operation, but there is no other evidence thereof except a tenderness. There is also testimony that appellant now runs a very high blood pressure, but the medical testimony in the case negatives the lung abscess as being a contributing cause.

The appellant apparently relies in the main upon the fact that when he returned to work, he was not given his old job of office manager, cashier and plant foreman, but was assigned to work largely outside the printing plant, and with which new duties he had some knowledge. At one time, Mr. Cary, the owner, had done this outside work, but on account of failing health, his ability to contact the trade had been eliminated or very seriously limited. From the standpoint of the employer, there were two reasons why appellant was not given his old position, to wit: The position had been satisfactorily filled by the promotion of another employee, and Mr. Cary being physically unable to contact the trade, needed some one for this "outside" position, so gave it to appellant. The former job held by appellant required long hours and arduous work, and paid him approximately $50.00 per week. The new work to which he was assigned requires much shorter hours, is not so confining, and the remuneration is the same. We attach no significance to the certificate of ap-

pellant's physicians, dated April 23, 1940, in the light of the explanation as to what was intended when this certificate was signed. Further than this, the certificate says that "total and permanent disability will continue for an indefinite period of time." It is obvious that the word "permanent" was a misuse of the word.

The law as to what constitutes total and permanent disability within the purview of insurance contracts is so well settled in this State that it does not require a restatement thereof. But, as stated by Mr. Justice Bonham in writing the opinion of the Court in *Stewart v. Pioneer-Pyramid Life Ins. Co.*, 177 S. C., 132, 137, 180 S. E., 889, 891, "the difficulty lies in the application of the law. Each case must be governed by the facts as shown by the evidence."

In the instant case, no real difficulty lies in the application of the law. Practically the only testimony as to disability at the time of the trial of this case in the Court below was that of the appellant, who after stating the difference in the work he formerly did and the work he was then doing, gave it as his opinion that he was not able to do the work he did prior to his operation. It may be that he could not, but no reasonable inference can be drawn from the testimony that if such is his physical condition, it was brought about by the lung abscess. On the other hand, all of the medical testimony is that he has had a recovery from the abscess, and that his high blood pressure was not brought about by the lung abscess. Moreover, the duties of his former position are not the only duties he was capable of performing. By reason of his long connection with the Cary Printting Company, and the necessity of from time to time having to take over some of the work of Mr. Cary due to the latter's state of health, he was more or less familiar with the work which he is now doing, or was doing at the time of the trial of this case. The mere fact that appellant did not get his same job back when he reported for duty with Cary Printing Company, would not entitle him to be declared

totally and permanently disabled. The question is: Is the appellant totally and permanently disabled from engaging in gainful employment—employment with which he has such familiarity that he can perform the duties thereof? On the record in this case, the answer must be no.

Having disposed of the major issue in this case, we now turn to the minor issues.

Exception is taken to the refusal of the trial Judge to permit the witness, Cary, to answer the question as to whether the appellant was able to carry on the duties of office manager and plant foreman of the Cary Printing Company after his operations. Cary was permitted to detail the duties and responsibilities of office manager and plant foreman, and was in no better position to give an opinion as to the physical ability of appellant to perform those duties than any other layman. Furthermore, the job was not open to be filled.

Did the Court err in refusing to permit the witness Cary to testify as to whether the appellant was as valuable an employee of Cary Printing Company after his operation as before? Appellant's answer to this question, assuming that it would have been in the negative, would have been irrelevant to any issue being tried.

Did the Court err in refusing to permit the appellant to testify as to his financial condition just prior to the time he returned to work? The trial Judge ruled that the appellant could testify why he went back to work. Thereupon, such question was asked, and a portion of the answer was: "Well, one reason was finances, of course." So in effect the appellant was permitted to testify to the identical matter ruled inadmissible.

In addition to the foregoing reasons, let us again reiterate that ordinarily, conduct of trial, including admission and rejection of testimony, is largely within trial Judge's sound discretion, exercise of which will not be disturbed unless abuse of such discretion, commission of legal error in its exercise, and resulting prejudice to appel-

lant's rights can be shown. *State v. Gregory,* 198 S. C., 98, 16 S. E. (2d), 532. See also, *Dutton v. Atlantic C. L. R. R. Co.,* 104 S. C., 16, 88 S. E., 263; *McLeod v. American Pub. Co.,* 126 S. C., 363, 120 S. E., 70; *Vollington v. Southern Paving Construction Co.,* 166 S. C., 448, 165 S. E., 184.

All exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON concur.