23840

Ann M. HOEFFNER and Thomas A. Hoeffner, Personal Representatives of the Estate of Gerald P. Hoeffner, Deceased, Appellants v. THE CITADEL and Joseph C. Franz, M.D., Respondents.

(429 S.E. (2d) 190)

Supreme Court

---

*Ellis I. Kahn* and *Justin S. Kahn* both of *Solomon, Kahn, Budman & Stricker,* Charleston, *for appellants.*

*Thomas Dewey Wise* of *Wise & Cole* and *M. Dawes Cooke, Jr.* of *Barnwell, Whaley, Patterson & Helms,* Charleston, *for respondents.*

Heard Feb. 2, 1993; Decided April 12, 1993.

Reh. Den. May 17, 1993.

HARWELL, Chief Justice:

Ann M. Hoeffner and Thomas F. Hoeffner (Hoeffners) brought a wrongful death action against The Citadel and Joseph C. Franz, M.D. (Franz), after their son committed suicide. After the jury returned a verdict for respondents, the Hoeffners appealed, alleging, among other things, that the

trial judge erred by instructing the jury that an act of suicide could constitute assumption of the risk. We agree that the trial judge's charge on assumption of the risk was inappropriate, and reverse for a new trial.

## I. *FACTS*

In January 1987, Gerald Hoeffner (Gerald), a Citadel sophomore, experienced emotional difficulty and told Franz, The Citadel's physician, that he often had thoughts of suicide. Franz referred Gerald to the school's counselor, Captain Robert Sauers (Sauers). Franz continued to treat Gerald periodically for unrelated medical problems and in March noted that Gerald was still depressed and having many suicidal thoughts. On April 12, Gerald hanged himself in his dormitory room.

The Citadel, at the direction of its president, General Grimsley (Grimsley), conducted an investigation into Gerald's death. Following the investigation, Grimsley issued a memorandum placing Franz on probation. Grimsley's memorandum expressly stated that he found no evidence linking Gerald's suicide to Franz's conduct. Further, the memorandum indicated that probation was administered as a result of Grimsley's belief that Franz periodically exceeded the scope of both his assigned duties and his professional competence.

In 1989, the Hoeffners filed this wrongful death action, alleging that The Citadel and Franz were negligent in caring for their son. The case was tried before a jury that was instructed it could find Hoeffner assumed the risk that caused his death if he 1) had actual knowledge of the danger, 2) understood and appreciated the risk of such danger, and 3) voluntarily exposed himself to such risk. During deliberations, the jury asked to be recharged on the law of assumption of the risk. Twenty minutes after being recharged, the jury returned a verdict for Franz and The Citadel. The Hoeffners appeal several of the trial judge's rulings.

## II. *DISCUSSION*

The Hoeffners first contend that The Citadel's act of placing Franz on probation demonstrated that Franz was negligent and, as a result, constituted an admission of culpability by The Citadel. Therefore, the Hoeffners believe that the trial judge

erred by excluding evidence that Franz had been placed on probation. We disagree.

Where professional negligence is alleged, expert testimony will usually be necessary to establish both the standard of care and the defendant's departure therefrom, unless the subject matter is within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant. *Pederson v. Gould*, 288 S.C. 141, 341 S.E. (2d) 633 (1986). Here, Grimsley was not qualified as a medical expert and the Hoeffners did not assert that Franz's professional negligence was within the realm of lay understanding. The trial judge ruled that Grimsley's lay opinion could not establish Franz's professional negligence. Absent a clear abuse of discretion amounting to an error of law, the trial judge's ruling on the admission of evidence will not be disturbed on appeal. *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E. (2d) 736 (1989). We find no abuse of discretion in the trial judge's ruling and dismiss the Hoeffners' first issue as being without merit.

The Hoeffners next contend that the trial judge erred by refusing to allow them to impeach Franz's credibility with the fact that Franz had been placed on probation. We disagree.

The Hoeffners called Franz, who listed himself as a potential expert witness, as the first witness in their case-in-chief. After eliciting Franz's medical opinion on several issues, the Hoeffners attempted to introduce evidence that The Citadel had placed Franz on probation in order to impeach his credibility as an expert. The trial judge ruled that Franz's probation was not relevant to an issue in the case.

Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue. *Associate Mgmt., Inc. v. E.D. Sauls Constr. Co.*, 279 S.C. 219, 305 S.E. (2d) 236 (1983). The trial judge has great discretion in the determination of the relevancy of evidence and his decision to either admit or reject evidence will not be disturbed on appeal unless there is an abuse of discretion amounting to an error of law. *Merrill v. Barton*, 250 S.C. 193, 156 S.E. (2d) 862 (1967).

Franz's probation was based in part on Grimsley's perception that Franz often exceeded the scope of his duties as defined by The Citadel and in part on Grims-

ley's opinion that Franz at times exceeded the scope of his professional competence. Franz's acting outside the scope of his employment is not relevant to his credibility as an expert. Further, Grimsley's opinion that Franz had exceeded the scope of his professional competence could not be used to question Franz's credibility as an expert because Grimsley was not qualified to judge Franz's medical competence. Accordingly, we find no abuse of discretion in the trial judge's prohibiting Franz's impeachment by evidence that Grimsley had placed him on probation.

The Hoeffners also contend that the trial judge erred by allowing Franz to respond to their opening statement and closing argument assertions that Franz's reputation was not at stake in the trial. We disagree.

Arguments by counsel which invite the jury to base its verdict on considerations not relevant to the merits of the case are improper. *City of Columbia v. Myers,* 278 S.C. 288, 294 S.E. (2d) 787 (1982). Where professional negligence is alleged, comments directing the jury's attention to the impact that an adverse verdict will have on the defendant's reputation are objectionable. *See* Annotation, *Malpractice: Propriety and Effect of Instruction or Argument Directing Attention to Injury to Defendant's Professional Reputation or Standing,* 74 A.L.R. (2d) 662 (1960 & Supp. 1992). Thus, Franz's comments regarding the impact an adverse verdict would have on his professional reputation ordinarily would be improper.

Here, however, the Hoeffners made the initial references to Franz's reputation, thereby opening the door for rebuttal. Further, even assuming that the trial judge erred in allowing Franz's comments, any harm was cured when the trial judge cautioned the jury not to consider sympathy, passion, or prejudice for or against any of the parties when weighing the evidence. *See Merritt v. Great Atlantic & Pacific Tea Co.,* 179 S.C. 474, 184 S.E. 145 (1936) (trial judge's error in failing to reprimand counsel's improper argument and to instruct jury to disregard is not reversible error where the judge later instructs the jury not to try the case on account of bias, prejudice, or sympathy). Consequently, we find no error in the trial judge's allowing Franz to rebut the inference that his professional reputation would not

be harmed by an adverse verdict.

Finally, the Hoeffners contend that the trial judge erred by instructing the jury that Gerald's suicide could constitute assumption of the risk. We agree.

The defense of assumption of the risk applies where the plaintiff assumes a risk of harm arising from the *defendant's* negligent or reckless conduct rather than his own. *See Restatement (Second) of Torts* § 496A (1965). In the absence of express consent to assume the risk, the plaintiff's conduct can be said to imply assumption of the risk where it is shown that he understood and appreciated a known danger created by the defendant, and then freely and voluntarily exposed himself to it. *See, e.g., Strange v. S.C. Dep't of Highways and Public Transp.*, — S.C. —, 414 S.E. (2d) 138 (1992).

It is clear that Gerald's act of suicide cannot establish that he assumed a risk of harm created by the defendant's alleged negligence in caring for his mental health. In *Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68, 393 S.E. (2d) 914 (1990), we stated that where a duty exists to prevent a patient from committing suicide, the very suicide which the defendant has the duty to prevent cannot constitute assumption of the risk or contributory negligence as a matter of law. *Bramlette* recognizes that whenever a duty exists to prevent suicide, the act of suicide resulting from a breach of that duty cannot establish a defense to liability for the breach. *See Cowan v. Doering*, 111 N.J. 451, 545 A. (2d) 159 (1988) (it would be anomalous to hold that a breach of duty results in no liability for the very injury the duty was meant to protect against). Accordingly, we find that the trial judge erred by instructing the jury that Gerald's suicide could constitute assumption of the risk.

We are concerned, however, that our decision to apply *Bramlette* to out-patient settings could be construed to impose a strict duty upon health care professionals to take extreme action whenever a patient expresses signs of depression. Therefore, we take this opportunity to clarify the duty to prevent suicide referred to in *Bramlette*.

The discharge of a duty requires the exercise of reasonable care. *See Hart v. Doe*, 261 S.C. 116, 198 S.E. (2d) 526 (1973) (negligence is the failure to use that degree of care which a person of ordinary prudence and reason

would exercise under the same or similar circumstances). Reasonable care, in the context of professional negligence, requires the exercise of that degree of skill and care which is ordinarily employed by members of the profession under similar conditions and in like surrounding circumstances. *See King v. Williams*, 276 S.C. 478, 279 S.E. (2d) 618 (1981) (degree of care for a physician is that of an average competent practitioner in the same or similar circumstances). Thus, a professional's duty to prevent suicide requires the exercise of that degree of skill and care necessary to prevent a patient's suicide that is ordinarily employed by members of the profession under similar conditions and circumstances. *Accord Eisel v. Bd. of Education*, 324 Md. 376, 597 A. (2d) 447 (1991) (school counselors have a duty to use reasonable means to attempt to prevent a suicide when they are on notice of a student's suicidal intent); *Brandvain v. Ridgeview Institute, Inc.*, 188 Ga. App. 106, 372 S.E. (2d) 265 (1988), *aff'd*, 259 Ga. 376, 382 S.E. (2d) 597 (1989) (while there is no duty to guarantee that a patient will not commit suicide, there is a duty to the extent possible under reasonable medical practice to prevent suicide).

Further, the question whether the duty has been breached turns on the professional's departure from the standard of care rather than the event of suicide itself. *See Cox v. Lund*, 286 S.C. 410, 334 S.E. (2d) 116 (1985) (two prong burden of proof in medical malpractice case requires that a plaintiff show the applicable standard of care and the defendant's failure to follow that standard). Therefore, because health care professionals are subject to liability for failure to prevent suicide only when departure from the standards of their profession proximately causes their patient's suicide, it is clear that *Bramlette* does not impose strict liability on those with a duty to prevent suicide.

In conclusion, we find that the trial judge erred by instructing the jury as to assumption of the risk. Accordingly, we reverse and remand for a new trial. Our holding makes it unnecessary to address the Hoeffners' remaining issue.

Affirmed in part, reversed in part, and remanded.

FINNEY, TOAL and MOORE, JJ., and JASPER M. CURETON, Acting Associate Justice, concur.